Good morning. Good morning. May it please the court, David Menninger on behalf of petitioner Julio Rocha, who is present in court this morning, and I do plan on reserving two minutes for rebuttal. All right, counsel. Mr. Rocha's attorney told him that his plea agreement had a benefit that it did not have. Mr. Rocha's attorney, Michael Evans, told him that the plea agreement's anticipated sentence of less than a year in custody would be helpful under immigration law. Would be helpful or might be helpful? He said, Your Honor, that the sentence would be helpful, Your Honor. Where in the record can we look to find the precise wording that was used by the attorney? That would be Mr. Evans' testimony, which would be helpful. Isn't he right about that, though? I mean, the premise, as I understand it, of that advice is if you are not in the radar in a Federal custodial situation, that will be to your benefit. So take this deal, because it has the promise that you won't have to serve any Federal time and, therefore, won't alert the immigration authorities. Respectfully, Your Honor, everyone believed at the time the plea agreement was signed, everyone thought that it was most likely that Mr. Rocha would serve time in custody. That is what Mr. Evans thought. That is what Mr. Rocha thought. They all anticipated a sentence from 6 to 12 months. To be sure, it was an unanticipated result at the end that the judge sentenced him to a probationary sentence. Well, it may have been unanticipated in some sense, but it was certainly an appropriate disposition. There is nothing about the probationary sentence that was wrong. So it was a possible benefit going into the process if they accepted that plea agreement. Yes, Your Honor, but it wasn't an anticipated benefit. It wasn't a benefit that was advertised. It was not the benefit that was advertised by Mr. Evans. I thought Mr. Evans said it would be helpful under one factor that's considered under U.S. immigration law. Do you agree that that was Mr. Evans' characterization of the advice? Absolutely, Your Honor. What was wrong about that? Because it was not helpful under immigration law at all. Under any factor? No, Your Honor. For fraud offenses that involve a loss over $10,000, like count one of the The sentence is completely irrelevant. It's 100% always an aggravated felony. So far from helping him, the plea agreement actually guaranteed that this offense would be an aggravated felony, which made him permanently deportable from the United States and deprived him of essentially any legal avenue of being able to stay in the country with his family. So could you address the prejudice element of it? So you would have to show that he would have been able to negotiate a more favorable deal? That's exactly right, Your Honor. As this court just last year made clear in Rodriguez-Vega, he would have to show that it would be reasonably probable that he could have negotiated a plea agreement that lacked those adverse immigration consequences. In Rodriguez-Vega, this court found that the petitioner had made that showing by citing to various plea agreements, I think about five plea agreements, that that particular U.S. Attorney's Office that handled the prosecution had agreed to negotiate to that lacked the adverse immigration consequences. But, Mr. Manager, isn't that entirely speculative? I mean, the U.S. Attorney's Office, they have different policies at different times. Even if you can make an argument that they should have found an alternative plea just as good for them to have accepted, we have no way to know if that would have been something that the U.S. Attorney's Office would have done that. And, you know, supplying other plea agreements where they've done that is — doesn't really help on the speculative aspect of that argument. Well, Your Honor, that is precisely the evidence that this Court relied on in Rodriguez-Vega — in United States v. Rodriguez-Vega. So I would submit that it is — it is — it is more than sufficient. And I would note in Rodriguez-Vega, it cites far fewer plea agreements, beneficial plea agreements than were cited or were presented to the district court in this case. In this case, Mr. Evans tried to get a deal that was a misdemeanor deal. He tried to get a four-level reduction — Right. — as I understand it. And the United States Attorney's Office said no. So why isn't it, just as perhaps a stronger inference, that this was the best deal that they were going to provide? And this idea that they would have done a deportation-safe deal, we have no basis to — to find that. Your Honor, the — the deal that — that counsel here has proposed that would have consequences, the only practical difference would — it would not have changed his guidelines. The only practical difference would have been that it would not have had that $100 of a special assessment. It wouldn't affect anything other than just that $100. Your Honor, a misdemeanor is a much bigger ask in this case, as is a four-level reduction in the guidelines. And for that — and I would point out, too, that actually neither of those — neither of those proposed pleas that Mr. Evans did present would have mitigated the immigration consequences in this instance. Did you get a declaration from the assisted U.S. attorney that he was amenable to the disposition which you're proposing? No, Your Honor. We put in a declaration from a longtime federal public defender that stated that she had — she had been in the office, had been negotiating with the U.S. Attorney's Office. She had been in the office for years, and that she would have been able to negotiate a better plea agreement. And Your Honor, I would point out that the government is in the best position to rebut this evidence, and despite having opportunity to do so, the government did not do that in this case. Well, counsel, could I take you back to Rodriguez-Vega? Would you point me to the language in the case that you're relying upon to support your argument that presentation of other plea agreements satisfy your burden? Because it appears in that case that we referenced a prior plea agreement that was actually presented to her as opposed to just representational plea agreements for that district. Do you agree with that characterization of what we held in that case? I do agree that there was discussion of a prior plea agreement in that case, but they did discuss other plea agreements offered by that U.S. Attorney's Office, and I'm looking specifically, Your Honor, if I can find the site, I believe it's on page 788 of the Federal Reporter, and specifically, 788, 789, and specifically footnote 7 is the compendium of plea agreements or of cases in which more favorable pleas had been offered. So this case falls squarely under Rodriguez-Vega, which I note that did come down only after the district court issued the... that a prior more favorable plea agreement had been offered to her. Right? Well, Your Honor, I don't believe it was a more favorable plea agreement. It was a plea that would have stipulated to her removal, if I recall correctly. I thought there was something about, on page 785, it said when she, when she rejected that plea agreement requiring her to stipulate, her attorney obtained a revised plea agreement that did not include the stipulation for removal. So there was a favorable plea agreement that was offered. Well, Your Honor, that is the plea that she ultimately accepted, but the court in Rodriguez-Vega found that, in fact, the attorney had performed deficiently in not advising her that that plea also would lead to an aggravated, was an aggravated felony conviction. But it was on the stipulated removal part that, wasn't, was that the, wasn't that the sticking point at the time? Yeah. So there was the first plea agreement, Your Honor, that was to, that included a stipulated removal. The, Ms. Rodriguez-Vega rejected that. Then there was a second plea agreement that did not have a stipulated removal, but was nonetheless an aggravated felony offense. Apparently, the attorney did not understand that it was an aggravated felony offense. And pursuant to counsel's advice, she did accept that plea. All right. Thank you, counsel. And at this time, Your Honor, I would like to reserve the portion of my time. All right. Thank you, counsel. We'll hear from the government. Good morning, Your Honors. May it please the Court, Aaron Ketchel for the United States. In considering defendant's petition, the district court elected to hold limited evidentiary hearings on a discrete dispositive issue, namely, whether Mr. Evans had affirmatively misadvised defendant regarding immigration consequences. The district court heard testimony from Mr. Evans and heard testimony from Ms.  And ultimately made a factual finding that defense counsel had not affirmatively misadvised defendant regarding immigration consequences. On appeal, defendant seeks to reverse that order and argues that the petition for quorum nobis should have been granted based on the evidence below. But the evidence demonstrates that the district court did not clearly err in making the factual findings, considering disputed evidence, and finding that there was no merit to defendant's petition for quorum nobis. Counsel, what's your... I'm sorry. How can we really characterize this as anything but misadvice when, as I understand it, what Mr. Evans said, and there's no dispute, factual dispute here, he is essentially saying this is going to provide you some benefit if you accept the plea. And the plea deal didn't provide any immigration benefit as it happened because the ultimate plea was a probationary plea. That benefit of not being in Federal custody did arise. But where is — where can you identify the benefit in this plea agreement that Mr. Evans told Mr. Rocha to accept? Your Honor, let me — there are two parts to that question. The first premise that you said was that there's no factual dispute over what was said. And let me come back to that in a minute and first address the second part of your question, which is... I said there's no factual dispute on the question I asked. I realize there are some factual disputes, perhaps, about how the evidentiary hearing played itself out in the testimony. But on the issue of the benefit, I don't think there's a factual dispute. Well, there's — the factual dispute is over what the misadvice was. And our argument is that defendant characterized the misadvice as something different in his petition and everything up until the point that he was cross-examined at an evidentiary hearing. So setting aside what that claim was initially, if we're looking at what the second claim is, which is with regard to the helpfulness of the plea agreement, the benefit was a real one. And it was, as Your Honor suggested in the question, it is a pragmatic benefit, which was that having a plea agreement in which defendant was allowed to argue for removal, the government conceded that he was entitled to a minor role reduction, and that the parties would leave open other factors for argument, meant that it reduced — it allowed defendant to seek a probationary sentence, reduced the chance that defendant would be placed into custody, as, in fact, he did receive a probationary sentence. And that meant that defendant would not face an immigration hold, which would mean that defendant would have been immediately placed in removal proceedings upon his release from custody. But the plea deal was not for both sides to argue for a probationary sentence. The plea deal was contemplating custodial time, potentially. So if the advice is, take this plea deal because it will provide you with immigration benefit because you're going to spend a year or less, and maybe, if you're lucky, even less time than that, that's not much of a benefit unless, by chance, you get a probationary sentence. But that is potentially helpful, Your Honor. And the possibility to seek that probationary sentence is a real benefit. What defense counsel faced here was a defendant who had committed a fraud offense with a loss of well over $10,000 and who had confessed to that offense. This was an aggravated felony through and through. And what defense counsel tried to do was to try to mitigate the chance that defendant would be removed as much as possible by negotiating a plea agreement in which he had the best chance of seeking a probationary sentence. And in the record, defense counsel, Mr. Evans, testified that he did want to seek and it was his practice to seek probationary sentences for the very reasons we were discussing, in that it is a real pragmatic benefit. He also discussed another benefit, potentially, which was the idea that having a sentence of under a year could potentially provide a benefit under the statute because there is a chance that this offense could have been characterized as a theft defense, for example, which, if there was a sentence of greater than a year, would have been another way that it could have been characterized as an aggravated felony. So there was also some benefit under the statute, but the government certainly realized that the more clear and direct benefit here was a pragmatic one, but one that was very real and had a clear benefit for the defendant. Importantly, the district court here was also applying the standard under Kwan and not the more recent standard under Padilla. Under the 2010 decision in Padilla, the Supreme Court held that defense attorneys have a duty to provide accurate advice to their clients about immigration consequences. But as this court knows, in Chaydez, the Supreme Court held that Padilla could not be applied retroactively. So for a defendant to prevail here, he must fall under the more stringent standard of Kwan. And Kwan, in this court's decision in 2005, says that an attorney cannot affirmatively misadvise a defendant about immigration consequences. And under that standard, the district court did not clearly err in denying the petition. Counsel, would you address the prejudice aspect in the event that one or more of the judges on the panel does not buy your argument under Kwan? What's the lack of prejudice in this case? The lack of prejudice... Even if we think there was ineffective assistance of counsel, would you argue that there is no prejudice? There's two points here. The government believes that there is evidence in the record that can allow the court to find that there was no prejudice. But as the government asserts in its brief, the prejudice argument is not actually an argument that was fully briefed by the parties in the court below. And the government would ask for an opportunity to further address that and further develop the record in the court below if the court is seeking to reverse based on a prejudice argument. I thought the district judge did ask the parties if they were going to address the prejudice question at the evidentiary hearing, and it was addressed. It was fully discussed, wasn't it? Well, it was discussed, and the defendant raised it sometime. And the district court did address the prejudice argument, but in some ways I believe appellates have mischaracterized the record here a little bit. Up until the first evidentiary hearing, or excuse me, when the court initially issued its first order granting the motion to dismiss prior to the evidentiary hearings, defendant filed its motion for relief for judgment or a motion for reconsideration. And in that, the defense said the court should not have raised prejudice. This was not an issue that was raised by the parties, and it has not been addressed by either party. The government, in responding to that, said defendant's right. This was not an issue that had been raised by the parties. The government is seeking to address a narrow legal claim, and if the court wishes to address prejudice, we would want to develop the record further. In the evidentiary hearings, the district court, there was a discussion about what evidence would be allowed through the declarations of defendant's counsel. And this is discussed a little bit in the reply brief on pages 15 and 16, where defendant asserts that what happened is that the court said that it understood that issues of prejudice were outside the record but would be allowing it. That mischaracterizes, it's taken out of context and mischaracterizes what the court said. What the court said was that it was going to allow a declaration in from the defense counsel, and that declaration was going to address the very specific question of whether defense counsel had approached the U.S. Attorney's Office seeking a better disposition. Not whether all of these plea agreements and the policy of the U.S. Attorney's Office with providing more favorable plea agreements generally in these types of situations. Counsel spoke a lot about Rodriguez-Vega, but I think the more instructive case here is the Chan case that defendant relies on in their brief to talk about what a potentially more beneficial disposition could be. The general argument is that defendant could have pled only to count two of the information and not pled to count one. Count one, of course, is the only count that has a loss attached to it. So it would be the government's argument that this is the more serious charge and it would have likely been the charge that the government would have required the defendant to plead to. As it's typically the case, the government requires defendants to plead to the most serious charge. But counsel, Rodriguez-Vega does contain that footnote which references other cases. So why doesn't that support counsel's argument? Rodriguez-Vega is an alien smuggling case. Chan is a fraud case. In Chan, what Chan said is that the parties agreed in the plea agreement that there was a loss of $605, that the loss amount was $605 but agreed to a greater restitution amount. The government would not have agreed to such a low loss amount here because the loss amount was the specific offense characteristic that was driving the sentence. So for the government, it would have been important to include in the factual basis of the plea agreement that the loss was $90,000 or $89,000 and for that reason, there would have really been no way to get around the loss amount and obtain a more favorable disposition in the plea agreement. Thank you, counsel. Rebuttal. Your Honor, I want to make one point very clear and that's the distinction between the legal benefit that was advertised by Mr. Evans and the accidental benefit of having serving no time in custody. First of all, Mr. Evans said this will help you under immigration law, so he advertised it as a legal benefit not merely a benefit that was temporary, that was fleeting and that could end at any time that you can fly under the radar, hopefully we have no idea of knowing and if immigration comes knocking at your door, too bad. That's not what he said. He said that this will help you under immigration law. In other words, that you will have a leg to stand on in immigration court, that you will be able to present your case, that you will have some ability legally to argue that you're entitled to stay in the country and I think that's a very significant distinction. Really what Mr. Evans did in this case was he gave Mr. Rocha a false sense of security, an idea that protection wouldn't necessarily be complete but that the plea agreement would provide him with some legal protection, some legal help in being able to stay in the United States. He ended up getting that level of not 100% comfort, but he ended up not being in federal custody and therefore not on the federal radar screen and so he did get some benefit. Well, Your Honor, respectfully, it was not a legal benefit. It's not a legal benefit. Why does that matter? Because that's not what was advertised, Your Honor. And I think, again, there's a very significant distinction between being able to, you know, having kind of a happenstance and temporary fleeting benefit that could end at any moment and having a benefit under the law. Counsel, do you seek to go back to renegotiate a plea or to go to trial? What's your ultimate? What do you want ultimately? Well, Your Honor, we're asking that the conviction be vacated and if the government does desire to press charges again I can't represent exactly what Mr. Roach is. You're just going one step at a time. Exactly, Your Honor. All right, thank you. If there are no further questions? Thank you. Thank you to both counsel. The case just argued is submitted for decision by the court.
judges: Rawlinson, Bea, Seeborg